STREETS v. GRAND TRUNK RY. CO. et al.

(Supreme Court, Appellate Division, Fourth Department.  November 25, 1902.)

1. RAILROADS—INJURIES—NEGLIGENCE—COMPETENCY OF SERVANT.

In an action against a railroad company for injuries due to a locomotive having passed a semaphore that indicated that the track was occupied, it appeared that the engineer had not been over that part of the road more than three or four times in as many years prior to the accident; but it was not shown that he was not trusty, and it appeared that he knew where the semaphore was, and knew its purpose. *Held*, that defendant was not negligent in selecting the engineer.

2. SAME—PROXIMATE CAUSE.

In an action against a railroad company for injuries due to a locomotive having passed a semaphore that indicated that the track was occupied, the mere fact that the engine was running at the rate of 25 miles an hour at the time afforded no basis for liability; it not having contributed to the injury.

3. SAME—NEGLIGENCE—RULES.

The rules of a railroad company provided that when a train should be detained at any point, or stopped at an unusual place, torpedoes should be set to warn approaching trains, and a man sent back with a flag. The road rented the use of its tracks in a certain yard to another company. An engine and train of the first road was crossing a track, certain semaphores being set so as to show the track in question to be occupied. The morning was foggy, and a train of the lessee road passed a semaphore, and a collision resulted. *Held*, that the rules had no application, and there was no negligence in not using torpedoes or a flagman.

4. SAME—PASSENGERS.

An engine wiper riding on an engine was not a passenger, though the railroad knew that he and other of its employés were habitually violating its express rules, which prohibited them, under any circumstances, from riding on the engine.

5. SAME—FELLOW SERVANTS.

An engine wiper, injured through the negligence of an engineer with whom he was riding, being a co-employé, could not recover for his injuries.

6. SAME—CONTRIBUTORY NEGLIGENCE.

An engine wiper riding on a locomotive was injured, owing to the engineer running by a semaphore set so as to indicate that the track was occupied. In an action for the injuries, he testified that he tried to see the semaphore, but could not, because of a fog. He knew the use of the semaphore. *Held*, that he was guilty of contributory negligence.

Action by Jesse Streets against the Grand Trunk Railway Company and another. There was a verdict for defendants. Motion by plaintiff for a new trial upon exceptions ordered heard at the appellate division in the first instance. Exceptions overruled, and motion denied, and judgment ordered dismissing the complaint.

The action was brought to recover damages for injuries sustained by the plaintiff in a collision between a locomotive being operated by the defendant the Grand Trunk Railway Company, on which the plaintiff was riding at the time, and a train of freight cars being operated by the defendant the New York Central & Hudson River Railroad Company, on the 1st day of July, 1897, alleged to have been caused through the joint negligence of the defendants. The action was tried at a trial term of the supreme court held in and for the county of Erie on the 7th day of January, 1902. At the close of plaintiff's evidence the court granted a motion made on behalf of the de-

---

¶ 4. See Carriers, vol. 9, Cent. Dig. § 976.

78 N.Y.S.—46½

fendant the Grand Trunk Railway Company that the plaintiff be nonsuited; and at the close of the whole case, on motion of counsel for the defendant the New York Central & Hudson River Railroad Company, a verdict was directed in its favor, and an order was made directing that plaintiff's motion for a new trial upon exceptions be heard in this court in the first instance.

Argued before McLENNAN, SPRING, WILLIAMS, HIS- COCK, and DAVY, JJ.

John Cunneen, for plaintiff.
Adelbert Moot, for defendant Grand Trunk Ry. Co.
Charles A. Pooley, for defendant New York Cent. & H. R. R. Co.

McLENNAN, J. At the time of the accident, and for many years prior, the defendant New York Central & Hudson River Railroad Company was the owner of a double-track railroad extending from Exchange street, in the city of Buffalo, northerly along the Niagara river, through Black Rock, to Niagara Falls. From Exchange street to Black Rock, a distance of about four miles, there were located upon either side of the tracks railroad yards, factories, and other business places, to which were extended sidings, which were connected with the main tracks by switches; making a large number of cross-overs, so called, from one main track to the other. The westerly track, or the one next to the river and lake, was the south-bound track, and was used by engines and trains going south, or from Black Rock and Niagara Falls to Exchange street. The easterly track was used by engines and trains going north, or from Exchange street to Black Rock or beyond. By arrangement between the defendants, these tracks were used by them in common for the purposes of their business, respectively, and under regulations or rules prescribed by the New York Central & Hudson River Railroad Company. At the time of the accident, about 100 trains, including light engines used for switching purposes, as well as regular passenger and freight trains, passed over these two tracks daily. In order to reach the siding extending into the yards, and to the factories and other business places along the route, engines and cars were at frequent intervals being moved from one main track to the other, and across the respective tracks. This apparently was necessary for the transaction of the business of the defendants, which was of the same general character at the time of the collision as it had been for many years prior. The passenger trains and a few of the freight trains ran upon schedule time, and a time-table was furnished to the employés, showing the time at which such trains were moved upon the tracks. The light engines, or switch engines, and the wildcat trains, so called, of which there were a large number, were not operated under any schedule, but were run over these tracks and across the same as occasion required; those operating them being required, under the rules of the company, to protect themselves and their respective trains by the use of signals which were prescribed by the general rules of the defendants.

The train dispatcher of the defendant New York Central & Hudson River Railroad Company, who was called as a witness by the plaintiff, testified:

"It is the business of the engineers of those trains and engines that run without orders to know what trains are approaching from either direction, and to keep out of the way of them. When they are making these cross-overs, they are supposed to protect themselves. They are supposed to protect themselves when they cross from one track to another where they do not belong. You cannot get into this yard unless you do cross the north track. When a man crosses a track, he is supposed to protect himself."

The witness stated that each of the engineers and trainmen operating upon those tracks was provided with the rules of the company. The rules of the defendant the New York Central & Hudson River Railroad Company, being the only ones which it is claimed relate to the questions involved upon this appeal, are as follows:

"Rule 24. Flags of the proper color must be used by day, and lamps of the proper color by night, or whenever, from fog or other cause, the day signals cannot be clearly seen."

"Rule 30. An explosive cap or torpedo, placed on the top of the rail, is a signal to be used in addition to the regular signals. The explosion of one torpedo is a signal to stop immediately. The explosion of two torpedoes is a signal to reduce speed immediately, and look out for a danger signal."

"Rule 99. When a train is detained from any cause at any of its usual stops, or when retained by an accident or obstruction, or stops at any unusual point, the flagman must immediately go back with danger signals to stop any train moving in the same direction. At a point three-quarters of a mile from the rear of his train he must place one torpedo on the rail on the engineman's side. He must then continue to go back at least one mile from the rear of his train, and place two torpedoes on the rail on the engineman's side, ten yards apart (one rail length), when he may return to a point three-quarters of a mile from the rear of his train, where he must remain until an approaching train has been stopped, or he is recalled by the whistle of his engine. When he comes in he will remove the torpedo nearest the train, but the two torpedoes must be left on the track as a caution signal to any following train. Should the flagman be recalled before reaching the required distance, he will place two torpedoes on the rail on the engineman's side, ten yards apart (one rail length), and will immediately return to his train unless an approaching train is within sight or hearing. If, from any cause, speed is reduced, the conductor and flagman will be held responsible for fully protecting the rear of the train by the use of proper signals. If the accident or obstruction occurs upon single track, and it becomes necessary to protect the front of the train, or if any other track is obstructed, the forward brakeman or trainman must go forward and use the same precautions. If he is unable to go, the fireman must be sent in his place. Conductors and enginemen will be held strictly responsible for the proper enforcement of this rule."

It also appears that the accident in question, which was caused by a light engine of the Grand Trunk Railway Company, which was going north, coming in collision with some freight cars of the New York Central & Hudson River Railroad Company which were going south, and which were being moved across the track on which the Grand Trunk engine was approaching, occurred at a point about midway between the two semaphores, which were about one mile apart. These semaphores were for the purpose of indicating to the engineer or trainmen whether or not the tracks between the two were or were not occupied by other trains; in other words, when an engineer going north on a locomotive came to a semaphore, if the arm was extended, under the rules of the company, which had been in vogue for years, it would indicate to him that the tracks between that semaphore and the one next north were occupied by some other

train or engine, and that it was unsafe for him to proceed further. If the arm of the semaphore was not extended, it was information to him that the tracks were clear, and that he could safely proceed, at least until the next semaphore was reached. On the day in question, beween 6 and 7 o'clock in the morning, it was very foggy,—not an unusual condition in that locality at that season of the year; and the engineer on the Grand Trunk engine could not see the semaphore, although he stated that he knew substantially where it was, and passed the point without ascertaining whether or not it indicated that the tracks beyond, and between it and the next semaphore, were free from trains, with the result that he came in collision with a train of the New York Central & Hudson River Railroad, which was not scheduled, which was crossing from the south-bound onto the north-bound track, on which his locomotive was proceeding. The plaintiff, who was an employé of the Grand Trunk Railway Company, and was engaged as a wiper in its engine house, was riding to his home on the engine of the Grand Trunk Railway, solely for his own convenience, and in violation of the express rules of the company, and, in the collision described, sustained the injuries for which he seeks to recover in this action.

As we understand the plaintiff's contention, it is: That the defendant the Grand Trunk Railway Company was negligent in permitting the engineer with whom the plaintiff was riding to operate the engine under the conditions which then existed, because he was not familiar with the situation and conditions; he only having passed over those tracks four or five times in as many years previous to the accident. In other words, that the engineer was not a person competent to discharge the duties imposed upon him, and that the defendant the Grand Trunk Railway Company was negligent in selecting him for such duties. And, second, because it failed to prescribe a proper rate of speed at which engines running light should be run over this track. That the defendant the New York Central & Hudson River Railroad Company is liable because it failed to adopt adequate and sufficient rules for the protection of those operating trains or engines upon that road, and because of the fact that it knew fogs were likely to arise which make it impossible to see the semaphores, and practically make the semaphores useless, and that other means should have been adopted to protect trains which were liable to pass such semaphores, because they could not be seen, and thus come in collision with a train which might be between such semaphores.

The evidence fails to establish negligence on the part of the defendant the Grand Trunk Railway Company in the respects claimed by plaintiff's counsel. The engineer who was operating its engine had been in the employ of the company in that capacity for nine years prior to the accident. There is no suggestion that he was not an experienced and trusty engineer, or that he had ever failed in the performance of any duty previous to the day in question. It appears that he had been over the road in question but three or four times in as many years just prior to the accident, but he knew where the semaphore was located, knew its purpose, knew the method of operating the road, knew fully about the density of the fog, and he

simply ran his engine past the semaphore without knowing whether it indicated that the tracks beyond were obstructed or not.  He had just passed over the south-bound track between these semaphores with his engine and a train of cars, and was going back with his engine light.  He was sworn as a witness, and testified:

"On the morning in question I did not notice whether the semaphore arm near the B. R. coal trestle was up or down.  I knew at that time that if the semaphore arm was against me, I should stop my engine or slow down.  However, I could not distinguish the semaphore arm, or see which way it was, on account of the morning being very foggy, and I was not very well acquainted with the locality at the time.  Still, I knew that that semaphore was there, and what it was used for, although I did not know exactly where it was."

There is no basis for the suggestion that the Grand Trunk Railway Company was negligent in permitting an engineer with such an experience, and with so complete a knowledge of the situation, to run a light engine over those tracks, which he had traversed immediately before with a train of cars.  Neither was it negligent in not having prescribed a maximum rate of speed at which the engine which he was operating might run.  If the semaphore had indicated safety, it could not be said that it would have been negligent to run his engine 20 or 25 miles an hour, as he was doing at the time.  At all events, there is no evidence in the case from which a jury would have been justified in finding that the collision in any manner resulted because of the rate of speed at which the locomotive was running, because it was running 25 miles an hour, instead of 8 or 10, or at a still lower rate of speed.  The accident was due to the fact that the engineer passed the point where he knew the semaphore was located, without ascertaining whether or not the track beyond was clear.  The most experienced engineer may pass a signal without observing it, because invisible on account of a storm or other atmospheric conditions, and thus cause a collision; but solely because of that fact, and because he did so on one occasion, it cannot be said that he was incompetent, and that the railroad company which employed him would be liable for his act on the ground of negligence in employing an incompetent servant.

Neither was the New York Central & Hudson River Railroad Company guilty of negligence.  Its train going south on the south-bound track passed the semaphore, which was then set at danger, and indicated to those in charge of all other trains that the tracks between the two semaphores were occupied; and those in charge of the New York Central train had a right to assume that the warning given by the semaphore would be heeded, if seen, or that, if for any reason it could not be seen, the place where it was known to be located would not be passed until the exact situation of the tracks beyond was known.  If an engineer on a freight train is given orders to run to a certain siding, the location of which he knows, and to go upon it in order to give a passenger train going in the opposite direction the right of way, it is no excuse for running past the siding that the switch light could not be seen on account of fog, or for any other reason; and the engineer of the passenger train would not be guilty of negligence because he failed to anticipate that the engineer

might run past the siding for any such reason, but he would have a right to assume that the siding would not be passed, notwithstanding any conditions of the atmosphere which might exist. Any other rule or practice would render the operation of railroad trains almost impossible. The New York Central train was where it properly belonged, and was being operated strictly in accordance with the rules applicable to it. The two semaphores midway between which the train then was, were for the express purpose of protecting it, and were ample for that purpose, if the warning given by them had been ascertained and heeded. The rule of the company in relation to the use of torpedoes and red lights, and requiring trainmen to go ahead of or behind the trains, has, as suggested by the learned trial court, no application to the operation of trains situate as the one in question was. The place of the accident was substantially a railroad yard. The schedule trains, whether passenger or freight, of course, had the right of way. The switch engines, whether light or engaged in shifting cars, were protected at the place in question by the semaphores. If torpedoes were to be used every time an engine went upon a cross-over in a place such as this is described to be, confusion and increased danger would be the result. It is difficult to imagine light engines and those engaged in shifting cars in a railroad yard being operated, even on a foggy morning, by the use of torpedoes. At all events, there is no evidence which suggests that any better or more improved method of operating a railroad situated as this one was has been devised than that which was in vogue upon this railroad.

The cause of the accident is plain. The train of the New York Central & Hudson River Railroad Company passed the semaphore, which was immediately set at danger, and proceeded to do its switching work between that semaphore and the one beyond. The engineer of the Grand Trunk Railway passed into this space with the semaphore set against him,—set so as to indicate that there was a train between the two. His excuse, of course, was that, because of the fog, he did not see and could not see the semaphore; but he stated, and there is no evidence to contradict him, that he knew the semaphore was there, and knew that it, and it alone, under the rules of the company, could indicate whether or not it was safe for him to proceed. Without taking any means to ascertain whether it was safe or not, he proceeded, and the accident resulted. As we have seen, he was an experienced engineer. Nothing, so far as is disclosed by the evidence, had come to the knowledge of the Grand Trunk Railway Company to indicate to it that he was not in every way qualified to discharge the duties of engineer. The fact that he was not accustomed to run over this road was not the cause of the accident, because he testified that he had been over the road but a few minutes before; that he knew the place where the semaphore was located, or substantially the place; that he knew its purpose; and, in effect, that he ought not to have proceeded until it indicated to him whether the track was clear or not.

The plaintiff was not a passenger of the Grand Trunk Railway Company, even assuming that it knew he and other of its employés

were habitually violating its express rules, which prohibited them, under any circumstances, from riding upon the engine as he was doing upon the occasion in question. He was an employé of the defendant, and a co-employé of the engineer, and therefore the defendant was not liable to the plaintiff for the negligence of the engineer. The plaintiff had been in the employ of the Grand Trunk Railway Company for 10 years prior to the accident. He had worked in the vicinity of Black Rock, and near where the accident occurred, for seven years, going back and forth on the engine. He testified that he knew the situation of the tracks; knew where the cross-overs were, and where the semaphores were. He was riding on the engine for his own accommodation. He stated that he knew at the time pretty near where the semaphore in question was; that he tried to see it, and could not, because of the fog, and knew that they were passing the place where it was located without any of them being able to see it. It is also evident from his testimony that the plaintiff knew how trains were operated upon the road in question; in other words, that he knew fully the conditions which existed; was fully informed as to the tracks, the location of the semaphores, cross-overs, etc., as well as the manner in which the road was operated. The plaintiff, when passing the place where the semaphore was, although aware of the fact, said nothing, did nothing, to cause the engineer to slow up or stop his engine. He made no effort to avoid the accident which must almost necessarily occur in case the semaphore indicated danger. He was an experienced railroad man, and it clearly was his duty, under the circumstances, to have called the attention of the engineer to the fact that they were passing the point where the semaphore was located, without knowing whether it indicated danger or safety. At all events, he was under obligations to have done or have attempted to do something to avoid the accident which he knew was liable to occur by reason of the failure to observe the semaphore. Under all the circumstances, it cannot be said that the plaintiff fairly met the burden of proof to establish that he himself was free from negligence which contributed to the injury. These views lead to the conclusion that the plaintiff's exceptions should be overruled, the motion for a new trial denied, and judgment ordered for the defendants, dismissing plaintiff's complaint, with costs.

Plaintiff's exceptions overruled, and motion for a new trial denied, and judgment ordered for the defendants, dismissing plaintiff's complaint upon the merits, with costs.

WILLIAMS, HISCOCK, and DAVY, JJ., concur. SPRING, J., concurs in result.